Lake, Ch. J.
This record presents really but two questions for our consideration; first, that of the constitutionality of the “act to provide relief for delinquent tax-payers,” approved February 27, 1873; and second, whether the facts stated in the petition are sufficient in law to constitute a cause of action. The fact that the judgment was rendered *507 while there was a demurrer on the files undisposed of, by which the question of the sufficiency of those facts was raised, although irregular practice, is of itself no ground for reversal. In effect the judgment overruled the demurrer and held the alleged facts to be adequate to sustain it. It was probably through an oversight that the demurrer was not formally disposed of, but inasmuch as it nowhere appears that the defendant desired to answer over, he was probably willing to submit the case upon the petition, if the court held it to be sufficient. At all events this is the effect of the course pursued as disclosed by the record, and if the facts pleaded justify the judgment rendered it must be sustained, but if they do not, it should be reversed.
But I will first dispose of the constitutional question which is raised. It is disclosed that the bill for the act in question originated in the senate, where it was passed by the constitutional majority, the yeas and nays being duly called, and entered on the journal. In the house, the bill was amended, and then duly passed. Upon its return 'to the senate, all that the journal discloses with respect to it is, that the amendments of the house were adopted, but by what majority, or in what manner the vote was taken, the journal of .the senate is silent. It is contended by counsel for the plaintiff' in error, that the constitution required the observance of the same formality in the vote by which the amendments of the house were concurred in, as was required on the final passage of the bill before it left the senate, and that the journal of that body should show an observance of this requirement. As to the vote on the final passage of the bill, in either house, the position of counsel is clearly correct. Sec. 11, Art. II, of the Constitution of 1867, declares that “on the passage of every bill in either house, the vote shall be taken by yeas and nays, and entered on the journal; and no law_shall be passed in either house with *508 out tbe concurrence of a majority of all the members elected thereto.” This provision is most clearly mandatory, and its non-observance in thes passage of any bill would render the act absolutely void. “The office of the journal is to record the proceedings of the house and authenticate and preserve the1 same. It must appear on the face of the journal that the bill passed by a constitutional majority.” Cooley’s Const. Lim., 140. Spangler v. Jacoby, 14 Ill., 297. The People v. Mahany, 13 Mich., 481. Fordyce v. Godman, 20 Ohio State, 1. McCulloch v. The State, 11 Ind., 424.
But it will be observed that the provision of the constitution above quoted refers only to the vote on the passage of bills. There are numerous other votes necessary during the progress of a bill to its third reading, to which it has no sort of reference whatever. These are left to the control of the house, under its usual j>arliamentary rules, except only that by another provision of the same section, of the constitution, any three members / of the senate, or five of the house, may require the yeas and nays to be entered upon the journal, whereby the vote may be preserved and known.
In McCulloch v. The State, 11 Ind., 424, which seems to be a case directly in point, it was held that where a senate bill had been amended in the house and returned, if the journal Only showed the amendments to have been concurred in, it was sufficient. The provision of the constitution of Indiana, then under consideration, is substantially like our own; and we accept this construction as ■being a sound exposition of its true meaning, and of the full extent of its scope and effect upon legislative action.
It is urged also against the validity of this act, that it was read twice in the senate on the same day, in disregard of section 19 of the constitution, before mentioned, which provides that “ every bill shall be fully and distinctly read three different days, unless in case of urgency *509 three-fourths of the house in which it is pending shall dispense with this rule.” On this point the journal of the senate shows that the rule was suspended by a vote of three-fourths of the members; and while it is silent as to the reason for the suspension, the presumption is that it was a case of urgency within the constitution. Whether any given state of circumstances present a “case of urgency ” authorizing a suspension of this rule, is not a question for the courts to determine, but is one left to the sole judgment and discretion of that branch of the legislature in which the bill is pending. Had the journal shown affirmatively that this bill was read twice on the same day without a suspension of this rule, the case would have presented an altogether different asjaect, and its result might not have been what it now is. To my mind it is clear that this particular command of the constitution, that every bill shall be read on three different days, in each house, unless on account of urgency this rule shall be dispensed with by a three-fourths majority, is just as imperative, and its observance quite as essential to the validity of any act, as any other provision of the fundamental law. But inasmuch as it is not required, as it is in respect of bills on their final passage, that each house shall enter upon its journal, and preserve the evidence of its having obeyed this rule, it will be presumed that they did so unless the contrary clearly appear. Cooley Const. Lim., 135.
On the question of the sufficiency of the petition to support the judgment, all that need be said is, that a careful inspection shows that it conforms to all the requirements of said act. In fact it is much fuller than it need to have been. As to the necessary allegations in such a petition, it is stated with particularity that the petitioner is the treasurer of Richardson county; that the taxes in question, giving the amount thereof for the years 1870 and 1871 respectively, were duly levied, had *510 not been paid, and were still subsisting liens upon the respective parcels of land on which, they were imposed. There is also a proper prayer for judgment. A reference to section nine of the act in question, will show that this is all that the petition proper need contain. It is true that the petition must be verified, and have certain exhibits attached thereto,, but any omission in respect to these matters is no ground for demurrer.
The objection that the petition should have contained a statement, of facts showing that the preliminary notice required by section three of said act was duly given, is not tenable. The notice was no part of the petition; it was merely an exhibit, whose only office was to show that the court had jurisdiction of the case. Had it failed in any respect to conform to the provisions of the statute, a special motion would have been the proper mode of reaching the defect.
But this question in respect of the notice is set at rest by the finding of - the court below. It is recited in the judgment “that due notice of the intended application for judgment has been given in the manner prescribed by law,” and no proper foundation having been laid for reviewing this finding, it is conclusive, and can-hot now be questioned. Ve see no reason for disturbing -the judgment of the court below, and it must be affirmed.
Judgment affirmed.